211

(Nos. 87-CC-3636, 87-CC-4231 cons.

RUTH CROWELL, EVERETT STEELE, and JOHN HERRON *et al.*, Claimants, *v.* THE STATE OF ILLINOIS, Respondent.

*Order filed January 6, 1994.*

JOHN HERRON and JUNE ANN TROSPER, *pro se*, for Claimants.

CRESWELL, FARES & RAYN (DAVID J. FARES, of counsel), for Claimants CROWELL & STEELE.

ROLAND W. BURRIS, Attorney General (COLLEEN MCCLOSKEY VON OHLEN, Assistant Attorney General, of counsel), for Respondent.

ORDER

PATCHETT, J.

This cause coming to be heard on Respondent's

motion for summary judgment, due notice having been given and the Court being fully advised in the premises, the Court makes the following findings:

These two lawsuits arise from the collision of two automobiles on June 26, 1986, at the intersection of Illinois Route 17 and Stateline Road. On June 26, 1986, Claimant Everett Steele was driving his car westbound along Illinois Route 17. Steele's sister, Ruth Crowell, was a passenger in Steele's car. The weather was good.

Claimant John Herron was travelling southbound on Stateline Road, a gravel road. His father, Raymond Herron[1] and brother-in-law Joseph Horvath were passengers in Herron's car. At approximately 8:30 a.m., Steele's car collided with Herron's car at the intersection of Route 17 and Stateline Road.

Both the "Steele parties" and "Herron parties" filed suit against the State in this Court, and these two cases have been consolidated. However, in addition to the present action, this accident instigated other litigation as well. On May 18, 1989, the "Herron parties" settled the circuit court action with the "Steele parties," paying $11,000 and $4,000 to Steele and Crowell respectively.

In this action, Claimants allege that the State is liable for their personal injuries resulting from the accident because the stop sign that was supposed to control the traffic on Stateline Road at its intersection with Route 17 was down. The accident occurred in Kankakee County, Illinois. The area in which the accident occurred is maintained by District 3 of the Illinois Department of Transportation (IDOT). District 3 covers approximately 2200 miles of State highway, encompassing 11 counties.

---

[1]Raymond Herron died on April 4, 1987, of cancer. (Exhibit "B" p. 39.) A claim for Raymond Herron's personal injuries has been brought by his administrator, June Ann Trosper.

Route 17, a paved State highway, is maintained by IDOT's District 3. Stateline Road is not maintained by IDOT. According to Edmund Wallens, the District 3 traffic engineer for IDOT, Stateline Road appears to be a county road to the south of its intersection with Route 17. To the north of its intersection with Route 17, Stateline Road is gravel and appears to be a township road. Stateline Road is also a "country road," which does not have a center line because it consists of gravel, which cannot be painted.

It is not disputed that at the time of the accident, there was not a stop sign at the intersection at issue. It is also undisputed that although Stateline Road is not maintained by IDOT, the Department does maintain the stop sign at the intersection of its Route 17 with Stateline Road, on the northwestern corner. IDOT sign maintainer Richard Arnold testified at deposition that the last time he patrolled the intersection at issue before the accident was sometime between May 20, 1986, and June 6, 1986. Arnold did not testify that during this patrol of the intersection at issue he noticed that the stop sign was missing. Department policy mandates that when a downed stop sign is reported directly to the field office, a temporary sign is to be erected within four hours and a permanent sign is put up within two days of the notification.

There is no firm evidence concerning the date which the stop sign went down. Yet, it is clear that after the accident, when IDOT had notice that the stop sign was down, it immediately erected a new one. Specifically, IDOT sign maintainer Arnold erected a brand new stop sign on the day after the accident.

IDOT is notified of missing or malfunctioning traffic devices by a variety of means. First, every IDOT worker, whether they are with the Bureau of Maintenance or Traffic, looks for downed signs during the daily course of

their duties. Second, members of the Department's Bureau of Traffic make routine sign inspections as well. IDOT also receives notice from the State Police if a stop sign is down or missing. Additionally, IDOT receives telephone calls from citizens concerning complaints about the signs.

The facts at bar clearly indicate that IDOT did not have notice of the missing sign before the accident. Stanley Martin, an IDOT field supervisor, testified at deposition that "it (the stop sign) was never reported to the Department as being down." Mr. Martin's testimony that the Department did not have notice that the stop sign was down is corroborated by Edmund Wallens, District 3's traffic engineer. Wallens testified that besides the telephone call that sign maintainer Arnold received *after* the accident, the Department never received any complaints about the stop sign at issue. Furthermore, in Respondent's answers to Claimants' interrogatories, A. Thomas Muraro, chief of IDOT's Bureau of Claims, answered under oath that IDOT never received any complaints about the traffic controls at or near the accident site prior to the accident.

### Conclusions of Law

Summary judgment is to be granted if the "pleadings, depositions, admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ill. Rev. Stat. 1991, ch. 110, par. 2—1005.

Although the State has the duty to maintain its highways in a reasonably safe condition, it is not the "insurer against all accidents which may occur by reason of the condition of its highways." (*Scroggins v. State* (1991), 43

Ill. Ct. Cl. 225, 226-27.) A defective condition on a State highway is not in itself negligence on the part of the State. (*Id.* at 226.) This Court has also stated that the State has no absolute duty to discover and remedy all defects, and it would be unreasonable for the State to be held liable for every possible defect in its highways. Furthermore, a defect must be substantial enough and exist for such a length of time that reasonable persons would conclude that immediate repairs should be made or warning signs posted. *Stege v. State* (1972), 27 Ill. Ct. Cl. 399, 403.

This Court has consistently held that in order to prevail on a negligent highway maintenance claim, a claimant has the burden of proving that the State had either actual or constructive notice of the dangerous condition. *Scroggins* at 226-27, citing *Stills v. State* (1989), 41 Ill. Ct. Cl. 60, 62.

As evidenced by the deposition testimony of Stan Martin and Edmund Wallens, in addition to the department's response to interrogatory number 11, the State did not have *actual* notice that the stop sign at the intersection of Route 17 and Stateline Road was down. There were clearly no reports or complaints made to the Department concerning the missing stop sign.

Just as Claimants cannot prove that the State had actual notice of the downed stop sign, nor can they prove that the condition existed for a long enough time to put the State on *constructive* notice of its existence. Constructive notice is imputed to the State where a condition by its evident nature, duration and potential for harm should necessarily have come to the attention of the State so that the State should have made repairs. *Scroggins* at 227-28.

In *Webee v. State* (1985), 38 Ill. Ct. Cl. 164, this Court was presented with a downed stop sign case. In that case, two cars collided at an intersection where the stop sign that was maintained by IDOT was down. As in this case, there was no evidence that the State had actual notice of the missing stop sign.

Thus, the determinative issue before us is whether the State should be charged with constructive notice of the defective condition. In the *Webee* case, we found that "the evidence at trial indicated that the sign was missing for a period of a month, possibly as long as six weeks." *Id.* at 168.

As already noted, IDOT sign maintainer Richard Arnold testified that he patrolled the intersection at issue sometime between May 20, 1986 and June 6, 1986. Thus, giving a liberal interpretation which yields the greatest possible benefit to Claimants, it is clear that because of Arnold's inspection of the site in May/June of 1986, the stop sign could only have been down since May 20, 1986 at the latest. This would have been five weeks before the accident. Although in *Webee v. State* we found that the absence of a stop sign for four to six weeks is a long period of time, we also found that "it should be noted that the absence of a stop sign on a rural, gravel-topped road is not likely to be noticed as quickly as on a major thoroughfare." *Id.* at 168-69.

Similarly, the stop sign at issue controlled traffic on Stateline Road, a *gravel* road maintained by a township and a county. Stateline Road is a country road, not a major thoroughfare, and because of its nature, a missing stop sign would not be as noticeable on it as it would be on a busier road. Just as we found in *Webee v. State* that the State should be allowed a longer period of time before it is charged with constructive notice of a downed stop sign

on a country road in a small town or village, so too we find that the State should be granted a longer period of time before it is charged with constructive notice of the missing stop sign on the gravel-topped Stateline Road. Thus, we hold that in the case at bar the State did not have constructive notice of the missing stop sign at issue.

## Conclusion

The law is clear that in order to prevail on a claim that the State was negligent in the maintenance of its highways, a claimant must prove that the State had notice of the alleged defect. As outlined above, it is clear from the deposition testimony and sworn interrogatory answers of the Department's employees that the State did not have actual notice of a defective condition at the accident location. No calls were ever received by IDOT from the State Police or citizens informing IDOT that the sign was down.

Similarly, the State cannot be charged with constructive notice of a defect. The last inspection of the intersection occurred sometime between May 20, 1986, and June 6, 1986. The accident occurred on June 26, 1986. Consequently, even giving the benefit to the Claimants that IDOT did not inspect the intersection before the accident since May 20, 1986, and the stop sign went down immediately thereafter, this is not enough time to put the State on notice of a downed stop sign on a rural, gravel-topped road. Therefore, because the State cannot be charged with constructive notice of the missing stop sign, there is no genuine issue of material fact, and the State is entitled to judgment as a matter of law.

It is hereby ordered that Respondent's motion for summary judgment is granted, thereby terminating this case.